**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

LYNNE GOODEN,                               :
Individually and as Guardian of Terrell     :
D. Gooden, et al.,                          :
                                            :
        Plaintiffs,                         :       Case No. 3:18-cv-00302
                                            :
vs.                                         :
                                            :       District Judge Walter H. Rice
CHRIS BATZ,                                 :       Magistrate Judge Sharon L. Ovington
Individually and as a Firefighter of        :
Butler Township, Ohio, et al.,              :
                                            :
        Defendants.                         :
                                            :

# REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Life-threatening accidents are heartbreaking.  Such an accident occurred to

Plaintiff Terrell D. Gooden in 2016 when his vehicle collided with a tractor-trailer on

Interstate 75.  Plaintiffs allege that when Paramedic Chris Batz checked Mr. Gooden's

pulse and respiration, he incorrectly concluded that Mr. Gooden had not survived the

accident.  Batz told other first responders that Mr. Gooden was not alive.  And neither

Batz nor other first responders immediately attempted to resuscitate Mr. Gooden or

provide him with any emergency medical care.

More than an hour later, Batz saw Mr. Gooden spontaneously move and

---

[1]Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

discovered he had a weak pulse.  First responders immediately administered advanced life-support treatment and transported Mr. Gooden to the hospital.  He survived with severe, permanent brain damage and additional long-term disabling health problems.

Mr. Gooden's court-appointed guardian, Lynne Gooden, and other Plaintiffs bring this case against some of the first responders at scene of Mr. Gooden's accident. Plaintiffs claim that these and other Defendants deprived Mr. Gooden of his rights under the Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution.  They raise many additional claims under state law.

Defendants removed this case from state court based on this Court's federal-question jurisdiction (28 U.S.C. § 1331) and supplemental jurisdiction over Plaintiff's state-law claims (28 U.S.C. § 1367).  (Doc. No. 1, ¶ 4).  Because complete diversity of citizenship between Plaintiffs and Defendants is lacking, diversity jurisdiction is not operative.  *Johnson v. Shank*, No. 3:12cv241, 2014 WL 794760, at *5 (S.D. Ohio 2014) (Rice, J.) (citing *Wisconsin Dept. of Corr. v. Schacht,* 524 U.S. 381, 388 (1998)).

The case is before the Court upon the Vandalia Defendants' Motion for Judgment on the Pleadings (Doc. No. 72), the Butler Township Defendants' Motion for Judgment on the Pleadings (Doc. No. 73), Plaintiffs' Memoranda in Opposition (Doc. Nos. 79, 85), Defendants' respective Replies (Doc. Nos. 87, 88), and the record as a whole.

## II.     BACKGROUND

### A.     The Parties

In addition to Mr. Gooden and his guardian Lynne Gooden, Plaintiffs are Stacy Carroll, on behalf Mr. Gooden's two minor children; Staci Sampson, on behalf of Mr.

2

Gooden's third minor child; and Kierra Carroll, Mr. Gooden's adult daughter.

The Butler Township Defendants are Paramedic Batz—who is also a police officer; Paramedic Brent Gallup; Butler Township Trustees Mike Lang, Kenneth M. Betz, and Joseph E. Flanagan, Jr.; Butler Township's Fire Chief Daniel Alig; and Butler Township, Ohio.[2]

The Vandalia Defendants are Paramedic Anthony Miller; Vandalia's Mayor Arlene Setzer; Vandalia's Vice Mayor Richard Herbst; Vandalia City Council members Bob Ahlers, Mike Blakesly, Candice Farst, David M. Gerhard, and David Lewis; Vandalia's Fire Chief Chad Follick; and the City of Vandalia, Ohio.

### B.    Plaintiff's Second Amended Complaint

Accepting Plaintiffs' factual allegations as true and construing their Second Amended Complaint ("Complaint") in their favor, *see JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007), reveals the following.

Mr. Gooden's accident occurred at approximately 4:06 a.m.  Thirteen minutes later, around 4:19, the Vandalia Fire Department arrived at the accident scene.  The Butler County Fire Department arrived about 4:23 a.m.

Upon his arrival, Batz found Mr. Gooden unconscious and partially ejected from the passenger-side window of his vehicle.  Batz incompetently and wrongfully checked—both visually and manually—Mr. Gooden for a pulse and respiration "neither of which Batz wrongfully claimed were present."  (Doc. No. 48, ¶ 27).  This incorrect information

---

[2]The remaining Defendants are the Ohio Department of Job & Family Services (if subrogation applies), and unnamed Jane and John Does, first responders or employees of Butler Township or Vandalia.

was communicated "to third parties who otherwise could and likely would have assisted Gooden." *Id*. at ¶ 28. At some point, Defendant Miller of Vandalia Engine 2 also checked Mr. Gooden for signs of life and wrongfully claimed none were present. *Id*. at ¶ 41.

Paramedic Gallup manually re-checked Mr. Gooden for a pulse "and signs of life and wrongfully claimed Gooden had none." *Id*. at ¶ 42. "A sheet was placed over Gooden and reports, known to be false, were made and disseminated by Batz, assuming the role of a doctor, determining that Gooden was dead." *Id*. at ¶ 43. "Defendants did not request air medical evacuation … or initiate *immediate* ground transportation to a hospital that would have properly diagnosed that Gooden was alive and administered immediate life-sustaining care[.]" *Id*. at ¶ 38. Construing Plaintiffs' Complaint in their favor, EMS protocols required first responders to immediately transport Mr. Gooden to the hospital even though Defendant Batz concluded that he had no pulse or respiration. *Id*. at ¶s 26-30, 39.

More than an hour after paramedics arrived at the scene of the accident, Defendant Batz began searching Mr. Gooden's vehicle for identification. During his search, Defendant Batz noticed Mr. Gooden make a sporadic movement. A re-check of Mr. Gooden's vital signs located a weak carotid pulse. Mr. Gooden was then removed from his vehicle and then given advanced life-support treatment, "which should have been done at the first encounter." *Id*. at ¶ 47. One hour and sixteen minutes had lapsed during which Mr. Gooden suffered from a lack of oxygen yet received no medical treatment. *Id*. at ¶ 49.

4

Mr. Gooden was transported to the hospital. He was diagnosed with "severe brain injury, avulsion of scalp, facial lacerations, and other permanently disabling conditions." *Id.* at 50.

\* \* \*

Plaintiffs assert that Defendant Batz or other first responders should have, indeed were required by EMS protocol or procedure, provide medical care for Mr. Gooden when first when they first encountered him. They say, for example:

> Defendants did not begin airway maintenance…, or administer basic CPR, administer the jaw thrust method to open Goodwin's airway, allow the chest to fully recoil, clear the airway, attach an automatic external defibrillator … after 1 to 2 minutes of CPR, address extremity injuries and bleeding via direct pressure or use sterile dressings, all of which were required by EMS protocol and procedure.

*Id.* at ¶ 31. Plaintiffs allege that Defendants also failed to "use basic SALT—Sort, Assess, Life-Saving Intervention Treatment/Transport procedure … which if they had … would have confirmed to Defendants that Gooden was alive …." *Id.* at ¶ 32. Plaintiffs' Complaint describes additional things that should have been done—but were not—to medically care for Mr. Gooden and ameliorate his injuries. *See, e.g.,* ¶s 33-38. And they charge:

> All of these steps were required according to EMS protocols, procedures, training and as part of the requirement under the standard and duty of care to provide emergency lifesaving services by EMS professionals at an emergency. They would have taken only moments to assess and begin to administer and would have resulted in substantial reduction or elimination of … Gooden's injuries.

*Id.* at ¶ 39.

\* \* \*

5

Some of Plaintiffs' allegation foreshadow their federal constitutional claims.  They report that Defendant Batz is "both a paramedic and a police officer … whose formal duties are to capture, physically control and take into custody, subjects within his purview."  *Id*. at ¶ 51.  Butler Township hired Batz as a Captain (or promoted him to Captain) and retained him as Captain "to lead EMS Battalion Medic Unit 88 despite his long history of documented sub-par job performance and reprimands on the job."  *Id*. at ¶ 52.  He received "numerous documented reprimands for inadequate safety checks, inadequate communication with fellow emergency service personnel including superiors, oversights, and dishonesty, which were all known to Butler Township prior to Gooden's accident."  *Id*. at ¶ 53.

Additional allegations that are significant to Plaintiff's federal constitutional claims concern the danger Gooden had been placed in at the scene of the accident.  Plaintiffs allege:

> The false report and sheet erroneously covering Gooden placed him in imminent peril and great danger in that it prevented other emergency personnel, or third parties … from assisting Gooden, when there were both passersby and named and unnamed persons on site.
>
> Batz's conduct, as a police officer, including covering Gooden with a sheet and reporting a lack of need for care, effectively and literally kept Gooden from being able to leave and thus contains all the elements of and constituted an arrest of Gooden who incurred further serious injuries from the deliberate indifference to his serious medical needs, great pain and further injury to Gooden as a result of Batz and Gooden's intentionally or recklessly false reports.

*Id*. at ¶s 44-45.

## III.    DISCUSSION

### A.    Rule 12(c) Standards

The Butler Township Defendants and the Vandalia Defendants seek judgment on the pleadings in their favor under Fed. R. Civ. P. 12(c).

Motions for judgment on the pleadings under Rule 12(c) test whether a complaint may proceed in whole or part.  Rule 12(c) generally follows the same standards as its close cousin, Fed. R. Civ. P. 12(b)(6).  *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019).

> Courts must accept as true all well-pleaded factual allegations, but they need not accept legal conclusions.  And the well-pleaded factual allegations must "plausibly give rise to an entitlement to relief."  Pleaded facts will do so if they "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Pleaded facts will not do so if they "are 'merely consistent with' a defendant's liability.

*Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

### B.    Plaintiffs' Constitutional Claims

Count Twelve of Plaintiffs' Complaint alleges that Defendants were deliberately indifferent to Mr. Gooden's serious medical needs in violation of the 4th, 8th, and/or 14th Amendments of the U.S. Constitution.  Plaintiffs lodge their claims against the individual Defendants in both their personal and official capacities.

Plaintiffs broadly label Count Thirteen: "Unconstitutional Policy, Failure to Train or Discipline Pursuant to 42 USC 1983 Against All Defendants…."  (Doc. No. 48, PageID 1266).  They generally state—without elaboration, "The maintenance of policies,

7

procedures, and protocols by the Defendants were inadequate or nonexistent or otherwise not implemented, followed, or enforced when violations occurred." *Id*. at ¶ 133.

## C. 42 U.S.C. § 1983 and Qualified Immunity

To raise a plausible claim under 42 U.S.C. § 1983, a plaintiff must allege facts satisfying two elements: (1) a person acting under the color of state law, (2) violated his rights under the Constitution or laws of the United States. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). Defendants focus their Motions on the second element and, therefore, it is assumed that the individual Defendants acted under the color of state law in connection with Mr. Gooden's accident. The second element draws Defendants' focus to the doctrine of qualified immunity.

The Butler Township Defendants contend that qualified immunity shields Paramedics Batz and Gallup from Plaintiffs' federal constitutional claims and liability under § 1983. The Vandalia Defendants maintain that qualified immunity shields Defendant Miller from Plaintiffs' constitutional claims and § 1983 liability.

Two inquiries determine whether qualified immunity applies: "(1) whether the public official's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the events." *Stewart v. City of Euclid, Ohio*, 970 F.3d 667, 672 (6th Cir. 2020) (citing *Godawa v. Byrd*, 798 F.3d 457, 462–63 (6th Cir. 2015)).

In support of their claims under the Fourth, Eighth, and Fourteenth Amendments (including the substantive Due Process Clause), Plaintiffs' reason that Mr. Gooden "had a right to receive medical treatment at the scene without being placed into increased danger from other persons including EMTs Batz, Gallup, and Miller…. Defendants failed to

8

provide appropriate medical care, or indeed any medical care, for over an hour after arriving at the accident scene, and proximately resulting from Defendants' false statements, reports and records."  (Doc. No. 48, ¶ 124).

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin County, Ky.*, __F.3d__, 2020 WL 5627106, at *6 (6th Cir. 2020).  This obligation protects inmates under the Eighth Amendment and provides analogous protections to pretrial detainees under the Fourteenth Amendment. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004); *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015).

The Eighth Amendment does not extend to Mr. Gooden because he was not an inmate at or after the time of his accident. *See Aldini v. Johnson*, 609 F.3d 858, 865 (6th Cir. 2010) ("[T]he Eighth Amendment does not apply to this incident because Aldini was not at that point a convicted prisoner." (citation omitted)); *Ingraham v. Wright*, 430 U.S. 651, 664 (1977) (The Eighth Amendment "was designed to protect those convicted of crimes.").  Mr. Gooden was also not a pretrial detainee and thus falls outside the analogous protections afforded them under the Due Process Clause of the Fourteenth Amendment. *See Baynes*, 799 F.3d at 618.  Plaintiffs' additional claims under the Fourth Amendment and the substantive Due Process Clause of the Fourteenth Amendment fare no better and ultimately share the same fate.

"Generally, 'it is not a constitutional violation for a state actor to render incompetent medical advice or fail to rescue those in need.'" *Peete v. Metropolitan Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217, 223 (6th Cir. 2007) (quoting *Jackson v.*

*Schultz,* 429 F.3d 586, 590 (6th Cir. 2005)).  Plaintiffs resist this generality.  They

contend, citing *Boone v. Spurgess*, 385 F.3d 923, 933-34 (6th Cir. 2004), that under the

Fourth Amendment's guarantee of reasonable seizures or the Fourteenth Amendment's

guarantee of substantive due process, "there is a constitutional right to receive adequate

medical attention."   (Doc. No. 85, PageID 1538).  *Boone*, however, is factually distinct

from the instant case.  The plaintiff in *Boone* (a beating victim) was handcuffed and taken

to jail by a police officer who did not provide him with first aid or summon emergency

medical personnel.  The plaintiff's Fourth and Fourteenth Amendment claims against the

police officer in *Boone* failed at the summary-judgment stage for lack of supporting

evidence.  *Boone*, 385 F.3d at 934.  At most, *Boone* stands for the proposition that an

arrestee or pretrial detainee might be able to support a Fourth or Fourteenth Amendment

claim based on the denial of medical care.  *Id*.  *Boone* did not address whether such

claims extend to a paramedic's failure to treat, and his prevention of others from treating,

an unconscious traffic-accident victim.

Two situations may obligate a state actor "to aid or protect an individual from

further danger: 1) the custody exception and 2) the state created danger exception."

*Peete*, 486 F.3d at 223 (citing *Jackson,* 429 F.3d at 590-91).

"The 'custody exception' triggers a constitutional duty to provide adequate

medical care to incarcerated prisoners, those involuntarily committed to mental

institutions, foster children, pre-trial detainees, and those under 'other similar restraint of

personal liberty.'"  *Jackson*, 429 F.3d at 590 (citing *DeShaney v. Winnebago County*

*Dept. of Social Services*, 489 U.S. 189, 200 (1989)*; Stemler v. City of Florence,* 126 F.3d

856, 867-68 (6th Cir. 1997)). What matters is the causal relationship between state action and the person's inability to care for himself or herself. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety." *Id.* (quoting *DeShaney,* 489 U.S. at 199-200). Consequently, "[t]he overarching prerequisite for custody is an affirmative act by the state that restrains the ability of an individual to act on his own behalf." *Id.* (citing *Stemler,* 126 F.3d at 868).

Plaintiffs point to the following factual allegations to show that Mr. Gooden was in state custody:

> 43. A sheet was placed over Gooden and reports, known to be false, were made and disseminated by Batz, assuming the role of a doctor, determining that Gooden was dead.
>
> 44. The false report and sheet erroneously covering Gooden placed him in imminent peril and great danger in that it prevented other emergency personnel, or third parties prevented from assisting Gooden, when there were both passersby and named and unnamed persons on site.
>
> 45. Batz's conduct, as a police officer, including covering Gooden with a sheet and reporting a lack of need for care, effectively and literally kept Gooden from being able to leave and thus contains all the elements of and constituted an arrest of Gooden who incurred further serious injuries from the deliberate indifference to his serious medical needs, great pain and further injury to Gooden as a result of Batz and Gooden's [sic] intentionally or recklessly false reports.

(Doc. No. 48). Plaintiffs contend that these actions placed Mr. Gooden in state custody and, by state action, exposed him to additional danger "such that the false presumption that he was dead could not be rebutted." (Doc. No. 85, PageID 1539-40).

The problem Plaintiffs encounter is that their Amended Complaint fails to allege

an affirmative act by the paramedics that restrained Mr. Gooden's "ability … to act on his own behalf." *Jackson*, 429 F.3d at 590. Instead, Mr. Gooden's accident caused him to be unconscious and unable to care for himself. This is so even though Plaintiffs' allegations reveal a number of affirmative acts by Batz—incorrectly not finding Mr. Gooden's pulse or respiration, placing a sheet over him, telling others he had died—and similar acts by Gallup and Miller. It was Mr. Gooden's accident-caused unconsciousness, not the paramedics' acts, that prevented him from acting on his own behalf.

In an analogous and instructive unpublished case, *Willis v. Charter Tp. of Emmett*, 360 F. App'x 596 (6th Cir. 2010), an accident occurred when a driver lost control of his pickup truck, became airborne, hit a semi-tractor, flew over a car (denting it), and ended upside down with the driver still inside. Parts of the pickup truck separated from its cab. The driver was unconscious. When a firefighter, who was also a police officer, arrived at the scene, he concluded that unconscious driver was dead. As paramedics arrived, the firefighter instructed them not to go the pick-up truck because the driver was dead and to assist other victims of the accident. Based partly on this and another firefighter's statements, everyone arriving at the scene assumed the driver was dead and a sheet was placed over him. The driver was left alone in the pickup for two hours while investigators gathered evidence. Someone eventually realized the driver was still breathing. An emergency helicopter flew him to the hospital. He was pronounced dead at the hospital approximately three hours after the accident. *Id*. at 598-99.

The custody exception did not apply in *Willis* because the pickup-truck driver "was restrained by the circumstances of the car accident, not by the defendants' actions."

12

*Id*. at 600.  The Sixth Circuit further explained:

> [The firefighters] did not did not use force or the threat of force when they informed others that [the driver] did not survive the accident nor did they demonstrate any intent to exercise control over [him], as would be required to satisfy the custody exception.  Most importantly, none of their actions restrained [the driver's] personal liberty—he was restrained by the unfortunate circumstances of the car accident.

*Id*.  The same is true of Defendants Batz's, Gallup's, and Miller's acts and omissions at the scene of Mr. Gooden's accident.  As in *Willis*, there is no indication that they (alone or together) used force or a threat of force to keep others from providing Mr. Gooden with emergency medical treatment.  Additionally, accepting Plaintiffs' facts as true does not raise a plausible inference that Batz, Gallup, or Miller intended to exercise control over Mr. Gooden, as is needed to satisfy the custody requirement.  *See id*.  And nearly identical facts in *Willis*—the incorrect conclusion by a firefighter (who, like Defendant Batz, was also a policeman) that the victim was dead, incorrectly telling others that the victim was dead, and placing a sheet over the victim—failed to show the required intent to exercise control over the victim.

What about Plaintiffs' allegation that Batz knew he was giving false information to other first responders by telling them Mr. Gooden was dead?  *Willis* found no custody arising in this situation, reasoning that even if the firefighters "had known that [the pickup-truck driver] was alive, the custody exception would not apply because they did nothing to restrain him."  *Id*.  The Sixth Circuit explained, "'The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his

13

freedom to act on his own behalf.'" *Id*. (quoting *DeShaney,* 489 U.S. at 200).  Because Plaintiffs' allegations concerning Batz, Gallup, and Miller do not raise a plausible inference that they imposed a limitation on Mr. Gooden's freedom to act on his own behalf, the custody exception does not apply.  *See Jackson*, 429 F.3d at 591 (Unconscious gunshot victim was not in custody when EMTs did not handcuff or otherwise restrain him or prevent him from leaving the ambulance); *Carver v. City of Cincinnati*, 474 F.3d 283, 286 (6th Cir. 2007) (Unconscious drug-overdose victim died in police presence without emergency care—victim not in custody because the officers never restrained his personal liberty in any fashion.).

Plaintiffs next rely on the state-created danger exception to the general rule that state actors do not violate the Constitution by providing incompetent medical advice or failing to rescue those in need.  This exception applies, according to Plaintiffs, because they have sufficiently alleged that Defendants Batz, Gallup, and Miller prevented others from aiding Mr. Gooden.

> For the state-created danger exception to apply, the plaintiff must allege: 1) an affirmative act that creates or increases a risk that the decedent would be exposed to private acts of violence; 2) a special danger to the decedent, such that the defendants' acts placed decedent specifically at risk; and 3) that defendants knew or should have known their actions specifically endangered the decedent.

*Carver v. City of Cincinnati*, 474 F.3d 283, 286 (6th Cir 2007).

Plaintiffs do not plead facts plausibly indicating that Paramedics Batz, Gallup, or Miller knowingly created or increased a risk that Mr. Gooden would be exposed to private acts of violence.  What they do say in their Complaint is that "[t]he false report

14

and sheet erroneously covering Gooden placed him in imminent peril and great danger in that it prevented other emergency personnel, or third parties prevented from assisting Gooden, when there were both passersby and named and unnamed persons on site." (Doc. No. 48, ¶ 44).

"[A] constitutional claim may be premised on state action 'cutting off' private sources of rescue without providing an adequate alternative." *Jackson*, 429 F.3d at 591. Plaintiffs contend that they state such a claim, and they find *Thompson v. Rochester Community Schools*, No. 03-74605, 2006 WL 932301 (E.D. Mich. 2006) instructive. In *Thompson*, a student collapsed while standing in a school-cafeteria line. The plaintiff alleged that school employees prevented rescue attempts by others by not calling 911, attempting CPR, or using the available defibrillator because they incorrectly thought the student was having a seizure and they needed to "let it ride out." *Id.* at *1. Someone eventually called 911 and paramedics attempted unsuccessfully to revive her. It was later determined that cardiac arrythmia caused the student to collapse. Facing a Rule 12(b)(6) Motion to Dismiss, plaintiff argued that a constitutional claim arose from Defendants' acts to prevent others from helping the student without providing a viable alternative. *Id.* at *4. The plaintiff in *Thompson* rested this argument on *Beck v. Haik,* 377 F.3d 624 (6th Cir. 2004), and the District Court agreed, finding:

> *Beck* provides strong Sixth Circuit authority for the idea that Defendants' failure to provide medical assistance to Cady [the student], while preventing others from doing so, could result in liability under Section 1983. This is especially true if Plaintiff can show that Defendants' policies and practices, which allegedly permitted the tragic outcome here, were motivated by a deliberate indifference to students' constitutional rights.

*Id.* at \*5.

Reading this carefully, the District Court did not establish a categorical rule that failing to provide medical assistance and preventing others from doing so would always result in § 1983 liability or would always suffice to state a § 1983 claim.  Additionally, *Thompson* arose when the no-set-of-facts standard applied to Rule 12(b)(6) motions to dismiss.  This standard has been "retired" and replaced with the plausibility standard.  *Boxill v. O'Grady*, 935 F.3d 510, 517 n.3 (6th Cir. 2019).

And *Thompson* is factually distinguished from the present case.  Here, there is no allegation that the paramedics stopped any specific first responder, bystander, or passerby from checking Mr. Gooden's pulse or respiration.  And, unlike in *Thompson*, Batz did nothing to stop Miller or Gallup from checking Mr. Gooden for a pulse even though Batz told them Mr. Gooden was dead.

Plaintiffs contend that the false report by Batz, Gallup, and Miller that Mr. Gooden was dead and the placement of a sheet over him suffice to show they prevented other paramedics, bystanders at the scene, and passersby from helping Mr. Gooden.  These actions, however, are not similar to those in *Thompson* where the defendants allegedly said things that prevented others from helping the collapsed student.  One defendant "advised others to 'let it ride out,' and 'advised others on the scene not to render aid to [the student], or obtain aid for her ….'"  *Id.* at \*1.  A different defendant in *Thompson* "'advised others on the scene not to render aid to [the student] and further advised the persons at the scene that she was in control and that everything was under control....'"  *Id.*  In the instant case, there is no allegation that Defendants Batz, Gallup, or Miller told

anyone not to help Mr. Gooden or stopped anyone from attempting to help him.  Neither

their incorrect report nor the sheet placed over Mr. Gooden (viewed alone or together)

prevented others from checking Mr. Gooden's pulse or respiration, or from attempting to

help him in another way.

Similar distinctions exist between the instant case and *Beck*, where police officers

stopped private qualified rescue divers, pursuant to a municipal policy, from searching

for a missing man who had fallen into a river, without providing a meaningful alternative

rescue service.  The Sixth Circuit held in *Beck* "that these allegations, if proven, were

jointly sufficient to establish a claim under 42 U.S.C. § 1983 for violation of Beck's due

process rights under the Fourteenth Amendment."  377 F.3d at 628 (citing *Beck*, 2000

WL 1597942 at *4 (6th Cir. Oct.17, 2000)).  Unlike *Beck*, there is no allegation in the

instant case that the paramedic Defendants took an affirmative action to prevent any

particular qualified rescuer from checking Mr. Gooden's pulse or respiration.  The

allegations of Batz's false report and the sheet placed over Mr. Gooden are not akin to the

more affirmative acts taken in *Beck* to prevent the drowning victim's rescue.

The present case aligns more closely with *Jackson v. Schultz*, 429 F.3d 586 (6th

Cir. 2005) in which the plaintiff asserted a substantive-due-process claim against

emergency medical technicians (EMTs) who failed to provide a gunshot victim with

medical treatment.  The EMTs were dispatched by the Detroit Fire Department to a bar

where they found the gunshot victim alive but bleeding profusely.  "The EMTs placed the

[victim-]decedent in their ambulance, where they later watched him die."  *Id*. at 588.  The

plaintiffs alleged that a fire-department policy mandated the EMTs to administer life

17

support, but they did not.  The plaintiffs further alleged that a fire-department policy

required the EMTs to transport the victim to a trauma center less than two miles away,

but they did not.  After observing that a state actor's incompetent medical assistance or

failure to rescue those in need does not violate the Constitution, *id*. at 590, the Sixth

Circuit held that the plaintiff failed to state a constitutional claim that the EMTs

prevented third-party aid.  *Id*. at 591.  Although the Sixth Circuit recognized that "a

constitutional claim may be premised on state action 'cutting off' private sources of

rescue without providing an adequate alternative," *id*. (discussing *Beck*), it held that the

plaintiff had failed to allege sufficient facts to raise this claim.  It reasoned:

> [the plaintiff] alleges only one relevant fact to this inquiry: the EMTs put
> decedent in an ambulance.  The EMTs did not discourage others from
> entering the ambulance.  All evidence indicates decedent was free to leave
> (or be removed from) the ambulance.  Furthermore, there is no evidence
> that any private rescue was available or attempted.  No set of facts
> consistent with the allegations shows that the EMTs interfered with private
> aid.  Thus, Jackson does not allege sufficient facts to support a claim for a
> constitutional violation based on cutting off private aid.

*Id*. at 591-92.  Similarly, in the present case, Defendants Batz's false report and the sheet

covering Mr. Gooden did not discourage Miller or Gallup from checking his pulse and

respiration.  The Complaint also fails to plausibly allege that Batz's false report and the

sheet over Mr. Gooden prevented other first responders from checking Mr. Gooden's

status because Miller and Gallup remained free to check, and did check, Mr. Gooden's

pulse or respiration.  And no affirmative act of prevention similar to those alleged in

*Thompson*, 2006 WL 932301 *1, *4, prevented a first responder, bystander, or passerby

from checking on whether Mr. Gooden was still alive.

18

Plaintiffs contend that *Shoup v. Doyle*, 974 F.Supp.2d 1058 (S.D. Ohio 2013)

(Rice, J.) is very instructive.  Indeed it is in many respects.  However, the factual context

in *Shoup*—where denying medical care to the plaintiff while she was in custody (pretrial

detention)—is wholly distinct from the allegations in the present case—paramedics

prevented other first responders, bystanders, or passersby from helping an accident

victim.  *Shoup* thus does not assist Plaintiffs' opposition to dismissal of her substantive-

due-process claim.

For the above reasons, the state-created danger exception does not expose Batz,

Gallup, or Miller to § 1983 liability.

Plaintiffs also maintain that the Affordable Care Act's (ACA's) extremely broad

language, in 42 U.S.C. § 18116, provided Mr. Gooden with a right to receive "life-

sustaining healthcare treatment."  (Doc. No.  48, ¶ 125).  And Plaintiffs gather the ACA

with other federal statutes to theorize:

> The ACA confirms Plaintiffs' claim that there is an affirmative right to life-
> sustaining medical care beyond the strictures of traditionally-understood
> custody alone, and reaffirms anti-discrimination principles in provision of
> healthcare as it long has been prohibited under a massive schema of other
> federal legislation, including Title VI of the Civil Rights Act (42 U.S.C. §§
> 2000a and 2000d et seq.), upon the basis of disability under 29 U.S.C. §
> 794, 42 U.S.C. § 12112, and 43 U.S.C. § 12101 (the Americans with
> Disabilities Act), or the Age Discrimination Act (42 U.S.C. § 6101 et seq.
> and 29 U.S.C. § 621).

(Doc. No.  48, ¶ 126).  Plaintiffs further plead:

> 127. To the extent this Court may determine there has not yet been
> recognized a fundamental constitutional right to healthcare access,
> Plaintiffs ask the Court to make a reasonable extension of existing law
> finding there is a fundamental right to receive some medical care in some
> circumstances, including the right to receive reasonable emergency medical

19

> care by EMTs in an emergency situation, where they are present, at the scene.
>
> 128. The alternative is to condemn many thousands—including racial minorities—who live, work, travel and conduct business and leisure disproportionately in economically depressed areas, including Gooden who is African-American and lives in Dayton, to a lower quality of healthcare access and care than areas with a higher tax base and better trained, equipped and capable EMT services.

*Id.*

Defendants do not specifically address Plaintiffs' claim that there is, or should be, a fundamental constitutional right, enforceable under § 1983, to receive life-sustaining healthcare treatment regardless of race.

Assuming in Plaintiffs' favor that such a constitutional right exists, Plaintiffs' Complaint fails to allege any facts upon which a reasonable inference arises that the Defendant Paramedics denied Mr. Gooden immediate emergency healthcare treatment based on his race. Consequently, to the extent Plaintiffs' § 1983 claim is based on alleged racial discrimination, it is conclusory and implausible.

\* \* \*

Accordingly, for all the above reasons, Plaintiffs' Complaint fails to assert a plausible claim § 1983 claim against Defendants Batz, Gallup, and Miller. Qualified immunity therefore shields them from Plaintiffs' § 1983 claims.

### D.     Section 1983 and *Monell* Liability

Defendants contend that Plaintiffs' § 1983 claims against the City of Vandalia and Butler Township fail because Plaintiffs have not identified a policy that violated their constitutional rights or was the moving force behind Mr. Gooden's injuries.

Generally, local governmental bodies face monetary liability under § 1983 "'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Williams v. City of Cleveland*, 907 F.3d 924, 934 (6th Cir. 2018) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). A municipality or other "'local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Id.* (quoting *Monell*, 436 U.S. at 694).

Defendants are correct that Plaintiffs' Complaint raises conclusory allegations about the existence of Defendants' "policies, procedures, and protocols" without providing allegations sufficient to create a reasonable inference that one existed and, through its application, violated Mr. Gooden's constitutional rights. *See* Doc. No. 48, PageID 1255-58, 1265-66. Plaintiffs' Complaint takes the opposite path by identifying "Regional EMS Protocols, Procedures and Employment Policies" that Defendants failed to follow. *Id.* at ¶s 29-39. They allege that implementation of these protocols, procedures, and policies "would have taken only moments … and would have resulted in substantial reduction or elimination of … Gooden's injuries." *Id.* at ¶ 39. To this extent, Plaintiffs' Complaint contains specific information about polices that would have helped Mr. Gooden had them been followed but contains no similarly specific information about a policy that violated his constitutional rights. For these reasons, Plaintiffs' Complaint fails to raise a plausible § 1983 claim under *Monell* against the City of Vandalia or Butler Township. *See Prado v. Mazeika*, 2018 WL 3456500, at *3 (S.D. Ohio 2018) (Newman, MJ) Report & Recommendation adopted, 2018 WL 4521935, at *1 (2018) (Rice, J).

21

Plaintiffs contend that they, "like the plaintiffs in *Beck* and *Thompson*, have specifically alleged that the tragic result in this case was the consequence of constitutionally inadequate policies." (Doc. No. 79, PageID 1513). They acknowledge that in *Beck* the constitutional claims went forward against county and municipal governments "based on alleged arbitrary policies against private rescue." *Id*. But Plaintiffs' Complaint does not identify a policy similar to the arbitrary policy in *Beck* that prevented the individual Defendants from medically treating Mr. Gooden when they first arrived at the scene of his accident. *Thompson* is also no help to Plaintiffs because it contains no information about the alleged policy. Thus, it does not support Plaintiffs' reliance on a nondescript policy.

* * *

Plaintiffs claim that Butler Township and the City of Vandalia are liable under § 1983 for the failure to train, evaluate, discipline, or supervise the conduct of their paramedics including Batz, Gallup, and Miller. They assert that these local governments failed "to teach and hold paramedics responsible and discipline for the applicable policies, procedures, protocols and training of the paramedics." (Doc. No. 48, ¶ 121).

"A municipality may be liable under § 1983 for a failure to train its employees or to institute a policy to avoid the alleged harm where the need to act 'is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.'" *Heyerman*, 680 F.3d at 648 (quoting *City of Canton v. Harris,* 489 U.S. 378, 390 (1989)).

22

The allegations in Plaintiffs' Complaint that potentially support their lack-of-training claim mainly concern the paramedic Defendants' actions at the scene of Mr. Gooden's accident.  Their actions during this single-accident response do not reasonably demonstrate that Butler Township or the City of Vandalia knew that the paramedics training was deficient or that a lack of training was likely to result in a constitutional violation.  *See Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010) ("To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)); *Greenlee v. Miami Tp, Ohio*, No. 3:14cv173, 2015 WL 631130, at *8 (S.D. Ohio 2015) (Rice, J) ("However, a 'single, isolated incident' of a failure to conduct a meaningful investigation or to discipline the officers involved cannot give rise to municipal liability.").

The Complaint alleges, "Defendant Batz was known to the Defendant Butler Township, and was in fact, a known liar and incompetent employee, who had not been adequately disciplined, trained, or otherwise made to conform to the standard of a chief paramedic and emergency medical technician in such circumstances as the injuries at bar and should not have been allowed to supervise Gooden's medical condition."  (Doc. No. 48, ¶ 7).  This falls short of raising a plausible failure-to-train claim against Butler Township because it does not offer factual information sufficient to raise a reasonable inference that his training was inadequate or caused Mr. Gooden to incur constitutional harm.  The Complaint, for instance, does not allege that Batz made serious mistakes

23

when examining victims of previous accidents that should have alerted Butler Township officials that his training was inadequate and likely to cause harm to accidents victims like Mr. Gooden. And, as to Defendants Gallup and Miller, Plaintiffs' Complaint contains no non-conclusory allegation indicating that they received inadequate training and that such training resulted in a violation of Mr. Gooden's constitutional rights.

Accordingly, Plaintiffs' Complaint fails to raise plausible failure-to-train claims under § 1983 against Butler Township or the City of Vandalia

* * *

Plaintiffs' Complaint also asserts § 1983 claims against the individual Defendants who were not paramedics or first responders—specifically, Butler Township Trustees Mike Lang, Kenneth M. Betz, and Joseph E. Flanagan, Jr.; Butler Township's Fire Chief Daniel Alig; Vandalia's Mayor Arlene Setzer; Vandalia's Vice Mayor Richard Herbst; Vandalia City Council members Bob Ahlers, Mike Blakesly, Candice Farst, David M. Gerhard, and David Lewis; and Vandalia's Fire Chief Chad Follick. The Complaint, however, does not advance facts indicating any of these individual Defendants encouraged or directly participated in a violation of Mr. Gooden's constitutional rights or "'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers [or paramedics].'" *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (quoting *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). The Complaint thus fails to raise a plausible claim of individual § 1983 liability against these individual Defendants. *See id.*

24

### E.    Plaintiffs' Official-Capacity Claims

Defendants contend that they are entitled to judgment in their favor on the claims Plaintiffs raise against the individual Defendants in their official capacity.

Claims brought against individual state actors in their official capacity are, in actuality, claims against the governmental entity that employs them.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Such claims are not focused on imposing liability against the state actor personally, "for the real party in interest is the entity."  *Id*. at 166.

Plaintiffs' claims against the individual Defendants in their official capacity are duplicative of their claims against the City of Vandalia and Butler Township.  As a result, dismissal of Plaintiffs' § 1983 official-capacity claims against the individual Defendants is warranted.  *See Hora v. Risner*, 3:18cv 344, 2020 WL 4726675, at *3 (S.D. Ohio, 2020) (Rice, J) (citing *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996) ("affirming district court's dismissal of official capacity claims against school officials as duplicative of claims against county")).

### F.    Remand to State Court

Defendants ask the Court to find no merit in Plaintiffs' state-law claims and to dismiss rather than remand them to state court.  Defendants correctly acknowledge that the Court has discretion to retain or decline to exercise supplemental jurisdiction over state-law claims in the absence of a federal claim.  *See* 28 U.S.C. §1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state-law] claim … if … the district court has dismissed all claim over which it has original jurisdiction….").

25

"When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Federal Exp. Corp*., 89 F.3d 1244, 1254-55 (6th Cir. 1996).  In the present case, the balance of consideration must include the fact that Plaintiffs originally filed the case in state court and Defendants removed it to this Court.  "In cases that have been removed to federal court…, 'when all federal claims have been dismissed before trial, the best course is to remand the state law claims to the state court from which the case was removed.'" *Novak v. MetroHealth Medical Center*, 503 F.3d 572, 583 (6th Cir. 2007) (quoting *Thurman v. DaimlerChrysler, Inc.,* 397 F.3d 352, 359 (6th Cir. 2004)).

The Butler Township Defendants contend that the principles of economy, convenience, fairness, and comity do not favor remand.  They point out that Plaintiffs have already had three bites at the pleading apple, and that a remand will delay the trial for another year beyond its presently scheduled September 2021 trial date in this Court. These points, however, are not convincing.  There will always be some delay in cases remanded pursuant to § 1367(c), and the one-year delay predicted by the Butler Township Defendants is not inordinate or inherently prejudicial to them.  The lack of prejudice readily appears because the case is in the pre-discovery and pre-summary judgment stage.  The interests of comity, moreover, favors remand to allow the Ohio courts to resolve issues of Ohio law concerning statutory immunity and the scope of damages available on state claims.

Accordingly, remand of Plaintiffs' remaining state-law claims to the Montgomery

County Court of Common Pleas is warranted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Vandalia Defendants' Motion for Judgment on the Pleadings (Doc. No. 72), the Butler Township Defendants' Motion for Judgment on the Pleadings (Doc. No. 73) be granted, in part, and Plaintiffs' claims under 42 U.S.C. § 1983 be dismissed, and be denied as to Plaintiffs' state-law claims;

2. Plaintiffs' state-law claims be remanded to the Montgomery County, Ohio Court of Common Pleas for further proceedings; and

3. The case be terminated on the Court's docket.


October 20, 2020                              *s/Sharon L. Ovington*
                                             Sharon L. Ovington
                                             United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).