IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LYNNE GOODEN, et al.,                    :

        Plaintiffs,

        v.                                :        Case No. 3:18-cv-302

CHRIS BATZ, et al.,                               JUDGE WALTER H. RICE

        Defendants.                 :

---

DECISION AND ENTRY ADOPTING UNITED STATES MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #90);
OVERRULING PLAINTIFFS' OBJECTIONS (DOC. #91); SUSTAINING
IN PART AND OVERRULING IN PART MOTION FOR JUDGMENT
ON THE PLEADINGS OF THE VANDALIA DEFENDANTS (DOC. #72)
AND MOTION FOR JUDGMENT ON THE PLEADINGS OF THE
BUTLER TOWNSHIP DEFENDANTS (DOC. #73); DISMISSING ALL
FEDERAL CLAIMS WITH PREJUDICE; DECLINING TO EXERCISE
SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS;
STATE LAW CLAIMS ARE DISMISSED AND REMANDED TO THE
COMMON PLEAS COURT OF MONTGOMERY COUNTY, OHIO;
JUDGMENT TO BE ISSUED ACCORDINGLY; TERMINATION ENTRY

---

This matter is before the Court on Magistrate Judge Sharon L. Ovington's

Report and Recommendations, Doc. #90, and the Objections to that judicial filing,

Doc. #91, by Plaintiffs, Lynne Gooden, individually and as the guardian of Terrell

Gooden; Terrell Gooden ("Gooden"); Stacy Carroll, as the parent and natural

guardian of Madison Carroll and Dezmond Carroll, minor children of Gooden;

Kierra Carroll, individually as the natural daughter of Gooden and Stacy Carroll;

and Staci Sampson, the parent and natural guardian of Mya Sampson, a minor

child of Gooden (collectively, "Plaintiffs"). A Response in Opposition to the Objections was filed by the "Butler Township Defendants,"[1] Doc. #93, and "the Vandalia Defendants."[2] Doc. #94.

The Magistrate Judge recommended that the Motions for Judgment on the Pleadings filed by the Vandalia Defendants, Doc. #72, and by the Butler Township Defendants, Doc. #73, be granted in part and overruled in part. More specifically, she recommended that Plaintiffs' federal claims under 42 U.S.C. § 1983, Counts Twelve and Thirteen, be dismissed, the state-law claims be dismissed without prejudice and remanded to the Montgomery County, Ohio, Court of Common Pleas for further proceedings and that the case be terminated on the Court's docket. Doc. #90, PageID#1638.

_____

[1]The Second Amended Complaint, Doc. #48, names the following seven Defendants, collectively referred to as the "Butler Township Defendants:" (1) Butler Township, Ohio; (2) Chris Batz, an employee of Butler Township, Ohio, and a Butler Township emergency medical squad, paramedic, firefighter and police officer ("Captain Batz" or "Batz"); (3) Brent Gallup, an employee of Butler Township, Ohio, and a Butler Township paramedic ("Paramedic Gallup" or "Gallup"); (4) Mike Lang ("Lang"), a Butler Township Trustee; (5) Kenneth M. Betz ("Betz"), a Butler Township Trustee; (6) Joseph E. Flanagan, Jr. ("Flanagan"), a Butler Township Trustee; and (7) Daniel Alig ("Alig"), the Butler Township Fire Chief. Even though Defendant, Butler Township, Ohio, is not included in the definition of the "Butler Township Defendants," it is a Defendant in in Plaintiffs' official capacity claims through Defendants Lang, Betz, and Flanagan, the Butler Township Trustees.

[2] The "Vandalia Defendants" consist of nine Defendants named in the Second Amended Complaint: (1) the City of Vandalia ("City" or "Vandalia"); (2) Arlene Setzer ("Setzer"), Mayor of Vandalia; (3) Richard Herbst ("Herbst"), Vice-Mayor of Vandalia; (4) Bob Ahlers ("Ahlers"), member of the Vandalia City Council; (5) Mike Blakesly ("Blakesly"), member of the Vandalia City Council; (6) Candice Farst ("Farst"), member of the Vandalia City Council; (7) David M. Gerhard ("Gerhard"), member of the Vandalia City Council; (8) David Lewis ("Lewis"), member of the Vandalia City Council; and (9) Chad Follick, Vandalia Fire Chief ("Chief Follick").

Plaintiffs filed timely objections to the Report and Recommendations. Doc. #91. No objections have been filed by the Butler Township Defendants or the Vandalia Defendants.

## I.    Background and Procedural History

Plaintiffs' Second Amended Complaint ("Complaint")[3] alleges that, at approximately 4:06 a.m. on August 6, 2016, Gooden was traveling northbound on Interstate 75 in the center lane and collided with the rear of a tractor-trailer. Doc. #48, PageID#1255.  The Vandalia Fire Department arrived at the scene at approximately 4:19 a.m. and the Butler Township Fire Department arrived approximately 4 minutes later. *Id.*   Doc. #48, PageID#1255.  The Complaint alleges that Batz, a Butler Township employee and an Emergency Medical Services ("EMS")/Paramedic/Firefighter and Police Officer, Captain, was the "the Paramedic in charge." *Id.*  He noticed Gooden partially ejected from the passenger side window and unconscious. *Id.*  The Complaint further alleges that "Batz recklessly, wantonly, willfully, incompetently, and wrongfully visually and manually checked" Gooden for a pulse and respirations. *Id.* "Batz wrongfully

---

[3] Plaintiffs' Complaint, Doc. #2, and First Amended Complaint, Doc. #3, were originally filed in the Common Pleas Court of Montgomery County, Ohio. The case was then removed to this Court by the Vandalia Defendants, the Butler Township Defendants and Defendant, the Ohio Department of Job and Family Services Tort Recovery.  Doc. #1. Following the filing of motions for judgment on the pleadings by the Butler Township Defendants and Vandalia Defendants, Doc. ##14 and 15, responses by Plaintiffs, Doc. ##18 and 19, and Defendants' replies, Doc. ##23 and 26, Plaintiffs filed a Motion to Amend their Complaint, Doc. #28, which the Court granted in part and overruled in part. Doc. #47.

claimed" neither were present and that this report "was against all physical facts" and Gooden's condition. *Id.* This "false statement" was allegedly told to "third parties who otherwise could and likely would have assisted Gooden." *Id.* As a "direct result" of the reports of Gooden's condition by Defendants Batz and Gallup, an Emergency Medical Services employee of Butler Township, there were no "reliable methods" used to determine life in Gooden. *Id.* Defendants gave and were given a false "do not resuscitate (DNR)" order concerning Gooden.[4] *Id.*, PageID#1256.

The Complaint alleges in detail the various medical tests and procedures that Defendants failed to perform at the scene to determine Gooden's true condition and the medical treatment that could have been provided to him. Plaintiffs allege that these steps to assess Gooden would have "taken only moments" and "would have resulted in a substantial reduction or elimination of Gooden's injuries." *Id.*, PageID#1256. Plaintiffs allege that "[A]ll of these steps were required according to EMS protocols, procedures, training and as part of the requirement[s] under the standard and duty of care to provide emergency lifesaving services by EMS professionals at an emergency." *Id.*

---

[4] The Second Amended Complaint does not give the identity of the "Defendants" who allegedly "gave and were given a false 'do not resuscitate (DNR) order,' on which they based their subsequent acts and omissions." Doc. #48, PageID#1256. However, because this alleged false DNR order was given at the accident scene, the Court assumes "Defendants" refers to Captain Batz, Paramedic Gallup and Paramedic Miller.

4

Plaintiffs allege that Paramedic Miller, a Vandalia employee, checked Gooden for signs of life and later at 4:25 a.m., Gallup re-checked him. The Complaint alleges that both of these Defendants did so "incompetently, recklessly, wantonly, willfully, and wrongfully." *Id.*, PageID#1257. Thereafter, Plaintiffs allege that Batz covered Gooden with a sheet and falsely reported that he needed no medical care, placing him in imminent peril and great danger. *Id.*

At approximately 5:35 a.m., Plaintiffs allege that Batz noticed Gooden make a sporadic movement. *Id.* His vitals were rechecked and a weak carotid pulse was found. *Id.* He was removed from the vehicle and advanced life support was initiated. *Id.* Gooden was then transported to the hospital and arrived there approximately one hour and thirty-six minutes after the accident. *Id.*

## II. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendations to which an objection is made. The Court may accept, reject, or modify, in whole or in part, the magistrate judge's findings, may receive further evidence, or recommit the matter to the magistrate judge with instructions. *Id.* See also Fed. R. Civ. P. 72 (b)(3). Pursuant to Fed. R. Civ. P. 72(b), the Court must review *de novo* those parts of the Report and Recommendations to which proper Objections have been filed.

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss

under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential [non-conclusory] allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A "legal conclusion couched as a factual allegation" need not be accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## III. Plaintiffs' Allegations

### A. Introduction

Plaintiffs' Complaint alleges 18 counts, 16 state law claims[5] and two federal claims in Counts Twelve and Thirteen pursuant to 42 U.S.C. § 1983. Count Twelve alleges that, following the August 6, 2016, automobile accident, Defendants were deliberately indifferent to Gooden's serious medical needs, that he "had a right to receive medical treatment . . .without being placed into increased danger from other persons including EMTs [emergency medical technicians] Batz, Gallup, and Miller pursuant to the 4th, 8th, and/or 14th

---

[5] The state law claims are as follows: Professional Negligence (Count One); Exemption from Political Subdivision Immunity (Count Two); Willful, Wanton and Malicious Misconduct (Count Three); Indivisible Injury (Count Four); Abandonment (Count Five); Intentional Infliction of Emotional Distress (Count Six); Breach of Fiduciary Duty (Count Seven); Violation of Public Policy (Count Eight); Constructive Fraud (Count Nine); Joint and Several Liability/Employment Relationships (Count Ten); Failure to Train, Evaluate, or Supervise (Count Eleven); Consortium (Count Fourteen); Declaratory Relief for the Unconstitutionality of the "Tort Reform Statutes Per Se and As Applied"(Count Fifteen); Unconstitutionality of Immunity Statutes *Per Se* and As Applied (Count Sixteen); Unconstitutional Policy and Willful, Wanton, Reckless Hiring and Retention (Count Seventeen) and Fraud (Count Eighteen).

7

Amendments of the United States Constitution." *Id.*, PageID#1265.  Count Twelve

further alleges that "the extremely broad language of the Affordable Care Act

(ACA), [u]nder 42 U.S.C. § 18116," also supports Gooden's right to life-sustaining

treatment. *Id.*, PageID#1265.  Count Thirteen alleges a "deprivation of

constitutional rights" against all Defendants, jointly and severally, in their official

and individual capacities for maintaining policies, procedures and protocols that

were "inadequate or nonexistent or otherwise not implemented, followed, or

enforced when violations occurred." *Id.*, PageID#1266.

Plaintiffs' Objections to the Report and Recommendations concern Counts

Twelve and Thirteen.  They contend that the Magistrate Judge erred in

recommending dismissal of these two federal claims. The Court will analyze each

objection separately.

### B. First Objection: Plaintiffs Pled Proper Claims Under 42 USC § 1983. (Count Twelve)

In Count Twelve of the Complaint, Plaintiffs allege that Defendants were

"deliberately indifferent" to Gooden's serious medical needs in violation of the

Fourth, Eighth and/or Fourteenth Amendments to the U.S. Constitution.  They

further allege that the individual Defendants are liable under § 1983 in their

personal and official capacities.  In response to the allegations in Count Twelve,

the Vandalia Defendants and the Butler Township Defendants asserted the

qualified immunity defense on behalf of Defendants Miller, a paramedic and

employee of Vandalia; Batz, a Butler Township employee, an EMS Paramedic in

charge, Firefighter and Police Captain; and Gallup, an EMS Paramedic and employee of Butler Township. Defendants Miller, Batz and Gallup contend that the Complaint asserts conclusions and, thus, it fails to allege facts sufficient to show a constitutional violation.

The qualified immunity defense protects defendants "from both liability and trial [as] long as they do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Greco v. Livingston County*, 774 F.3d 1061,1063 (6th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, (1982)). Because it is "an immunity from suit rather than a mere defense to liability. . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985) (emphasis deleted). As such, immunity questions should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534 (1991) (*per curiam*) (citations omitted). Plaintiffs have the burden of proof to show that the defendants are not entitled to its protection. *Chappell v City of Cleveland,* 585 F.3d 901, 907 (6th Cir. 2009). The Court then uses a two-step analysis: (1) viewing the facts alleged in the Complaint in the light most favorable to Plaintiffs, the Court determines whether the allegations give rise to a constitutional violation; and (2) if a violation exists, the Court considers whether that right was clearly established at the time of the alleged incident. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013). The Court, however, has discretion in

9

deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808 (2009).

For the right to be "clearly established," *Harlow*, 457 U.S. at 818, it must be defined with particularity and not generally. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034 (1987). "A right is 'clearly established' if '[t]he contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Goodwin v. City of Painesville*, 781 F.3d 314, 325 (6th Cir. 2015) (quoting *Anderson*, 483 U.S. at 640.) The same or similar fact patterns are not necessary. "[T]he question is whether the defendants had 'fair warning' that their actions were unconstitutional." *Goodwin*, 781 F.3d at 325 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508 (2002)).

The Report carefully analyzed the Complaint for constitutional violations under the Fourth, Eighth and Fourteenth Amendments. Concerning the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment, the Report stated that, although medical care must be provided by the government for those it detains, *Griffith v. Franklin Cty., Kentucky*, 975 F.3d 554, 566, 2020 WL 5627106, *6 (6th Cir. 2020), the Complaint does not allege facts that Gooden was either an inmate or a pretrial detainee at the time of the accident. Doc. #90, PageID#1620. As an inmate, the right to adequate medical treatment exists pursuant to the Eighth Amendment and, as a pretrial detainee, the right to such care falls under the Due Process Clause of the Fourteenth Amendment. *Watkins v City of Battle Creek*, 273 F.3d 682, 687-688 (6th Cir. 2001) ("Under the Fourteenth

10

Amendment Due Process Clause . . . pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners."). With respect to the Fourth Amendment and the substantive Due Process Clause of the Fourteenth Amendment, the Report and Recommendations states that no violations are alleged, since "[I]t is not a constitutional violation for a state actor to render incompetent medical assistance or fail to rescue those in need," *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir.2005), and the custody and state-created danger exceptions do not apply. For these reasons, the Magistrate Judge recommended that Defendants Batz, Gallup and Miller be given qualified immunity.

Plaintiffs' argument in their First Objection does not contest that, generally, a constitutional violation does not exist when a state actor renders incompetent medical assistance or fails to rescue. Instead, they contend that the Magistrate Judge construed the exceptions to this general rule too narrowly. They assert that the Complaint plausibly alleges facts implicating the custody, state-created danger and a third exception, interference with the due process right to private rescue. [6] They argue that the action of pulling a sheet over Gooden's face "prevented other

_____

[6] Although Plaintiffs alleged in their Complaint liability under the Affordable Care Act, 42 U.S.C. § 18116, Doc. #48, PageID#1265, it was not argued in their Responses, Doc. ##72 and 85, or in their Objections. Doc. #91. Therefore, the Court concludes that Plaintiffs have abandoned this theory of liability. *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011)) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment).

11

emergency personnel, or third parties" from assisting him, put his "body in the

custody of the state" and "through this state action, created additional danger [for

him] such that the false presumption that he was dead could not be rebutted." *Id.*,

PageID#1645.  Plaintiffs cite the following paragraphs of their Complaint as

support for the three exceptions:

> [43]. A sheet was placed over Gooden and reports, known to
> be false, were made and disseminated by Batz, assuming the role of
> a doctor, determining that Gooden was dead.
> [44]. The false report and sheet erroneously covering Gooden
> placed him in imminent peril and great danger in that it prevented
> other emergency personnel, or [prevented] third parties [ ] from
> assisting Gooden, when there were both passersby and named and
> unnamed persons on site.
> [45]. Batz's conduct, as a police officer, including covering
> Gooden with a sheet and reporting a lack of need for care, effectively
> and literally kept Gooden from being able to leave and thus contains
> all the elements of and constituted an arrest of Gooden who incurred
> further serious injuries from the deliberate indifference to his serious
> medical needs, great pain and further injury to Gooden as a result of
> Batz and Gooden's intentionally or recklessly false reports.

Doc. #48, PageID#1257.

Based on these allegations, Plaintiffs argue that their Complaint plausibly

alleged that the custody exception, state-created danger exception and the

interference with a due process right to private rescue exception are implicated.

Accordingly, Plaintiffs contend that the Magistrate Judge erred in recommending

qualified immunity for Defendants Batz, Gallup and Miller and should have

permitted discovery to proceed.

12

The Court has carefully considered Plaintiffs' arguments and, for the reasons set forth below, overrules Plaintiffs' First Objection.[7]   In doing so, the Court recognizes that "the precise factual basis for the plaintiff's claim or claims may be hard to identify" at the motion to dismiss stage, *Pearson*, 555 U.S. at 238-239, (internal quotation marks omitted), and that there is a  "general preference to save qualified immunity for summary judgment." *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (granting of qualified immunity to government officials reversed where plaintiffs stated a body-integrity substantive due process claim and complaint plausibly alleged government employees refused to reconnect to Detroit water despite knowing substantial risk to Flint residents' health).

Here, however, the essential facts are not in dispute and the law is clear. Plaintiffs' Complaint "establishes the defense" and taking all the allegations of "fact as true and reading all inferences in the plaintiff's favor," Plaintiffs have not "plausibly showed a violation" of clearly established rights thus making qualified immunity appropriate. *Siefert v. Hamilton County*, 951 F.3d 753, 761-62 (6th Cir. 2020) ("Thus, despite the general preference to save qualified immunity for summary judgment, sometimes it's best resolved in a motion to dismiss. This

---

[7] Although Plaintiffs alleged in their Complaint that Gooden was provided with a right to receive "life-sustaining healthcare treatment" under the Affordable Care Act, 42 U.S.C. § 18116 and also cite to anti-discrimination principles in healthcare referencing Title VII of the Civil Right Act, American with Disabilities Act and Age Discrimination Act, Doc. #48, PageID#1266, this argument was not made in their Responses to Defendants' Motions, Doc. ##79 and 85, and has not been asserted in their Objections. Therefore, as the Court has stated in n. 6, *supra*, they have abandoned these allegations.

happens when the *complete* establishes the defense." (emphasis added)).[8]

Although Plaintiffs allege in their Complaint conclusions that certain

constitutional rights were violated by acts or omissions of Defendants, they fail to

allege facts supporting a violation of clearly established law. "Clearly established

law" that is "applied at this level of generality" ultimately bears "no relationship

to the 'objective legal reasonableness' that is the touchstone of *Harlow*."

*Anderson*, 483 U.S. at 639.

The Court will analyze the three exceptions asserted by Plaintiffs, the

custody, state-created danger and interference with the due process right to

private rescue, to determine if any such apply based on the facts alleged in the

Complaint.

### 1. The Custody Exception

Plaintiffs initially assert that their Complaint supports the custody

exception. This exception applies "[W]hen the State takes a person into its

custody and holds him there against his will," creating a responsibility for his

safety and general well-being. *Deshaney v. Winnebago Courty Dep't of Social*

---

[8] To determine whether the "complaint establishes the defense," the Court first assumes that all the facts alleged in the complaint are true and draws all inferences in favor of the plaintiff. The complaint is then analyzed to determine if it plausibly alleges that "an official's acts violated the plaintiff's clearly established constitutional right." If not, then the officer-defendant is entitled to immunity from suit. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011); *Koch v. Ohio*, --Fed Appx.--, No. 20-3334, June 2, 2021, 2021 WL 2221644, (6th Cir. 2021) ("Even if Koch's allegations are true and we assume they state a retaliation claim, Koch cites no case that would have put Meyer on notice that failing to open an inspector general investigation into Koch's complaints would violate the Constitution, and we are aware of no such case.")

*Services et al.*, 489 U.S. 189, 199-200 (1989) (summary judgment affirmed in favor of county social services department and social worker finding no violation of the Fourteenth Amendment's Due Process Clause for failing to intervene to protect child against father's violence, since such duty only arises when state restricts individual's freedom to act on his own behalf). In *Jackson v. Schultz,* 429 F.3d 586 (6th Cir. 2005), the Sixth Circuit analyzed the custody exception when paramedics placed an unconscious shooting victim in an ambulance and allegedly provided no further medical care to him. *Id.* at 588. The Court found that the exception did not apply since "moving an unconscious patient into an ambulance" is not custody. *Id.* at 590. "[R]estraints of personal liberty. . . require some state action that applies force (or the threat of force) and [a] show of authority made with the intent of acquiring physical control."

The Complaint does not allege facts that any Defendant applied force or the threat of force and the show of authority that would have been a restraint of Gooden's personal liberty. "The overarching prerequisite for custody is an affirmative act by the state that restrains the ability of an individual to act on his behalf." *Deshaney*, 489 U.S. at 199-200. Although the Complaint alleges that a sheet was placed on Gooden, that action did not restrain him. Rather, it was his tragic accident rendering him unconscious and unable to care for himself that restrained him. *See, Willis v Charter Tp. of Emmett*, 360 F. Appx 596 (6th Cir. 2010) (no liability for emergency responders who assumed unconscious driver in overturned pick-up truck was deceased, informed others he did not survive and

15

placed a white sheet over his truck since driver not in custody and not restrained by responders).

## 2. State-Created Danger

The second exception asserted by Plaintiffs, the state-created danger exception, is likewise not applicable based on the facts pled. This exception requires a plaintiff to allege: "1) an affirmative act that creates or increases a risk that the decedent [or injured party] would be exposed to private acts of violence; 2) a special danger to . . . [that person] such that the defendants' acts placed [that person] specifically at risk; and 3) that defendants knew or should have known their actions specifically endangered the decedent [or injured party]." *Carver v. City of Cincinnati*, 474 F.3d 283, 286, (6th Cir. 2007((quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir.1998). In *Carver*, a case cited by Plaintiffs, police officers and paramedics were called to an apartment for a suspected cardiac arrest and found an individual dead on the floor. A second individual, Carver, was in the same room as the decedent. He was determined at the time to be unconscious, asleep, or passed out. He later died. The Court held that although the apartment was secured by the defendants as a crime scene and keys taken, there were no allegations that anyone attempted to enter the apartment to rescue Carter. Because "no private aid was cut off" and the victim was not in custody, there was no substantive due process violation and the Court reversed the denial of the motion to dismiss based on qualified immunity.

16

Based on the facts alleged in the Complaint, there are no factual allegations that any private aid was cut off to Gooden, that any attempt to rescue him was prevented by Defendants Batz, Miller and/or Gallup or that any of these Defendants knowingly created or increased a risk that Gooden would be exposed to private acts of violence.

### 3. Interference with Due Process Right to Private Rescue

The final exception argued by Plaintiffs is the interference with a due process right to private rescue. Plaintiffs assert that the following three cases support this exception: *Shoup v. Doyle*, 974 F. Supp.2d 1058 (S.D. Ohio, Dec. 22, 2015, Rice, J.), *Thompson v. Rochester Cmty. Sch.*, E.D. Mich. No. 03-74605, 2006 WL 932301(Apr. 11, 2006) and *Beck v. Haik*, 234 F.3d 1267 (6th Cir. 2000) (unpublished). The Court, however, finds these cases factually distinguishable and thus, inapposite.

Although the defendants in *Shoup* denied medical care to the plaintiff, unlike Gooden, Shoup was in custody, handcuffed and in the back of a police car. The defendants in *Thompson* prevented others from providing medical care to a student standing in a cafeteria line who had collapsed and was left lying on the ground. In response, high school employees were told not to call 911, do CPR, or use an available defibrillator. One defendant instructed those present to let the student "ride it out." The student died from a cardiac arrythmia. In *Beck*, an official county policy allegedly prohibited volunteer private rescue divers from beginning a search for a drowning victim until the county rescue team arrived.

Criminal prosecution was threatened if the private volunteers violated the county policy. Unlike *Thompson* and *Beck*, however, Plaintiffs do not allege any affirmative act by any Defendant preventing anyone from checking Gooden's medical condition. In fact, the Complaint alleges that Defendants Miller and Gallup checked Gooden's condition and found it consistent with Batz's finding.

For the reasons set forth above, Plaintiffs' First Objection is overruled.

## C. Second Objection: Plaintiffs' *Monell* Claims Are Well-Pled (Count Thirteen)

The Magistrate Judge recommended dismissal of Count Thirteen, stating that Plaintiffs failed to raise a plausible § 1983 claim under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, (1978), against the City of Vandalia or Butler Township. The Magistrate Judge noted that, although the Complaint cites to "Regional EMS Protocols, Procedures and Employment Policies" and states that complying with some of them would have taken "only moments . . .and would have resulted in substantial reduction or elimination of . . .Gooden's injuries," Doc. #48, PageID#1256, Plaintiffs do not identify a policy or custom that Defendants allegedly followed that violated Gooden's constitutional rights.

Plaintiffs' Second Objection to the Report argues that they "have [pled] proper official-capacity claims and claims under *Monell* . . . for deliberate indifference to a serious medical need[,]" and that *Beck* and *Thompson* both permitted *Monell* claims to proceed based on arbitrary policies against private

rescue. Doc. #91, PageID#1649. [9]  Plaintiffs contend that, like the plaintiffs in these two cases, they have alleged "that the tragic result in this case was the consequence of constitutionally inadequate policies." Doc. #91, PageID#1649.[10]

*Monell* creates municipal liability under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Williams v. City of Cleveland*, 907 F.3d 924, 934 (6th Cir. 2018) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  Moreover, municipalities and other local governments "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* (quoting *Monell*, 436 U.S. at 694). Respondeat superior alone does not create official policy liability against a governmental entity.  Plaintiffs, however, do not identify a Butler Township or

---

[9] Plaintiffs did not object to the following findings of the Magistrate Judge in the Report and Recommendations, Doc. #90: (1) Butler Township and Vandalia did not know that the paramedics' training was deficient or likely to result in a constitutional violation, Doc. #90, PageID#1634; (2) no facts were alleged indicating that any of the individual Defendants "encouraged or directly participated in a violation of Mr. Gooden's constitutional rights or 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers [or paramedics],'" *Id.*, PageID#1635; (3) Plaintiffs' official capacity claims are "duplicative of their claims against the City of Vandalia and Butler Township." *Id.*, PageID#1636; or (4) the state law claims should be remanded. *Id.* Accordingly, pursuant to Fed.R.Civ.P. 72(b)(2)-(2), Plaintiffs have waived any objection to these findings and recommendations.

[10] Although Plaintiffs' Second Objection states that they have pled "proper official capacity claims," Doc.#91, PageID#1649, their objection makes no specific argument in support. Because Plaintiffs claims against the individual Defendants in their official capacities are "in all respects[,] other than name, to be treated as a suit against the entity," *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099 (1985), and Vandalia and Butler Township are named Defendants, the Court considers these claims to be against these governmental entities and not the individual Defendants.

Vandalia policy or custom that inflicted injury on Gooden. Instead, they allege that certain regional policies were not followed by Batz, Gallup and Miller. This alleged failure to follow a policy or practice of an entity, however, does not create *Monell* liability. *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690 (6th Cir. 2006) ("A plaintiff who sues a municipality for a constitutional violation under § 1983 must [allege facts in a non-conclusory fashion] that the municipality's policy or custom caused the alleged injury.") (citing *Monell*, 436 U.S. at 690-91)). [11]

Plaintiffs rely on *Beck* and *Thompson*, asserting that like the plaintiffs in these cases, they "have specifically alleged that the tragic result in this case was the consequence of constitutionally inadequate policies." These cases, however, are readily distinguished from the instant case and do not establish a *Monell* violation. In *Beck*, the plaintiff identified an arbitrary policy in effect that prohibited privately trained rescue divers from assisting in a diving rescue until the county team arrived at the scene. Delay in the rescue operations due to enforcement of this policy was alleged to be the cause of death. Although *Thompson* contains no information about any formal policy or custom that prohibited others from providing medical aid or calling 911 for a student

---

[11] Although "[o]ne way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision," *Pendergrass*, 455 F.3d at 700, Plaintiffs, as stated earlier, have failed to raise this as an objection.

20

undergoing a medical emergency, facts were alleged that showed the defendants actively interfered with any rescue, by specifically instructing others not to provide any type of medical or emergency assistance to the student. Plaintiffs also contend that their Complaint alleges "deliberate indifference," to Gooden's serious medical needs, thus creating municipal liability. Although "[a] municipality may be liable under § 1983 for a failure to . . . institute a policy to avoid the alleged harm," *Heyerman v. County of Calhoun*, 680 F.3d 642 (6th Cir. 2012), Plaintiffs have not alleged facts showing that "the need to act 'is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.'" *Id.*, quoting *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, (1989)). Specifically, Plaintiffs do not allege that any prior incidents like Gooden's occurred to put them on notice of the need for a policy, thereby making them deliberately indifferent.

Because Plaintiffs have failed to allege a policy or custom that Defendants allegedly followed that violated Gooden's constitutional rights, Plaintiffs' Second Objection is overruled.

## IV. Conclusion

For the reasons stated in this Decision and Entry, the Court ADOPTS the United States Magistrate Judge's Report and Recommendations, Doc #90, and OVERRULES Plaintiffs' Objections thereto, Doc. #91; SUSTAINS IN PART AND

21

OVERRULES IN PART the Motion for Judgment on the Pleadings filed by the Vandalia Defendants, Doc. #72, and SUSTAINS IN PART AND OVERRULES IN PART the Motion for Judgment on the Pleadings filed by the Butler Township Defendants. Doc. #73. Said motions are sustained as to Counts Twelve and Thirteen, and overruled as to all state law claims, Counts One through Eleven and Counts Fourteen through Eighteen.

Plaintiffs' federal claims in Counts Twelve and Thirteen, pursuant to 42 U.S.C. § 1983, are dismissed with prejudice.

The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, Counts One through Eleven and Counts Fourteen through Eighteen. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that if federal claims are dismissed before trial, the state claims should be dismissed as well) and 28 U.S.C. § 1367(c)(3) (providing that district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction). Said state law claims are dismissed and remanded to the Common Pleas Court of Montgomery County, Ohio, with judgment to be issued accordingly.

Judgment shall be entered in favor of Defendants and against Plaintiffs.

22

The captioned case is hereby ordered terminated upon the docket records

of the United States District Court for the Southern District of Ohio, Western

Division, at Dayton

Date: June 10, 2021

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

23